**SWALLOW TURN MUSIC, et al., Plaintiffs,**

v.

**TIDAL BASIN, INC., et al., Defendants.**

**Civ. No. 81–0350 P.**

United States District Court, D. Maine.

Feb. 28, 1984.

John W. Philbrick, Verrill & Dana, Portland, Me., for plaintiffs.

Francis M. Jackson, III, Jackson & Pallas; Westbrook, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This matter is before the Court after hearing on Defendants' Revocation of Consent to proceed in this matter by reference of the District Court to the United States Magistrate pursuant to 28 U.S.C. § 636(c). The action was commenced by the Plaintiffs' filing, on September 10, 1981, of a Complaint seeking damages and injunctive relief for copyright infringement under 17 U.S.C. asserting the jurisdiction of this Court under 28 U.S.C. § 1338(a). The Plaintiffs set forth four causes of action for copyright infringement based on the Defendants' public performance of copyrighted musical compositions. Defendants' responsive pleading, which was an Answer containing two affirmative defenses, was filed on September 29, 1981. The affirmative defenses asserted were that the Complaint failed to state a cause of action for copyright infringement upon which relief may be granted, and that Plaintiffs' claims were barred by the doctrine of estoppel. The matter remained pending until June 6, 1983, on which date the parties, acting through counsel, executed a Consent to Proceed before the United States Magistrate. The consent reads as follows:

In accordance with the provisions of Title 28 U.S.C. Section 636(c), the parties to the captioned civil matter hereby waive their right to proceed before a Judge of the United States District Court and consent to have United States Magistrate D. Brock Hornby conduct any and all further proceedings in the case (including the trial) and order the entry of judgment.

The consent form executed by counsel for all parties also provided:

## CONSENT TO APPEAL TO JUDGE, U.S.D.C.

Any appeal shall be taken to the United States Court of Appeals for the First Circuit, unless all parties further consent, by signing below, to take any appeal to a judge of the district court, in accordance with 28 U.S.C. Section 636(c)(4).

Both counsel signed in the spaces provided, indicating that any appeal should be taken to a judge of this Court pursuant to § 636(c)(4). The consent form was filed with the Court on July 8, 1983. This Court thereafter referred the matter to Magistrate Hornby "for the conduct of all further proceedings and the entry of judgment in accordance with Title 28 U.S.C. Section 636(c) and the foregoing consent of the parties." Prior to the docketing of the consent and the Court's subsequent Order of Reference, the matter had proceeded through various stages of the discovery and pretrial motion processes. Thereafter, further motion practice took place before the designated United States Magistrate. The pretrial process culminated in entry on January 5, 1984, of the Magistrate's Final Pretrial Order in which he denied the pending Motion of the Defendants for Summary Judgment, indicated disposition of other final pretrial activities, and scheduled the matter for trial before him, commencing on Thursday, March 1, 1984.

Defendants filed the Revocation of Consent to Proceed Before the Magistrate on February 17, 1984. The Revocation of Consent reads as follows:

NOW COME the Defendants, through counsel, and due to serious questions re-

garding the jurisdiction of the Magistrate to try the case in light of recent federal rulings[,] withdraw their previously entered Consent to have the Magistrate hear this matter pursuant to 28 U.S.C. § 636 and further state that they no longer voluntarily consent to such hearing.[1]

Plaintiffs filed on February 22, 1984, a Memorandum in Opposition to Defendants' Revocation of Consent. The Court treats this memorandum as sufficient for all purposes to constitute an objection to the Revocation of Consent proposed by the Defendants pursuant to Local Rule 19(b). On February 23, 1984, the Defendants filed a Memorandum in Support of the prior Revocation of Consent. This Court heard oral argument of counsel with respect to the matter of revocation of the consent to proceed before the Magistrate on February 24, 1984. In their written submissions and initially at oral argument, the Defendants put forth two contentions: (1) that the prior Consent of the Defendants to Proceed Before the Magistrate pursuant to 28 U.S.C. 636(c) is invalid and subject to revocation because the Magistrate may not be constitutionally authorized, even by consent of the parties, to exercise the expanded jurisdiction purportedly conferred upon him by 28 U.S.C. § 636(c) to hear civil trials in jury and nonjury matters, and (2) that the Magistrate in this district is not authorized to conduct civil trials pursuant to the provisions of 28 U.S.C. § 636(c) because of the absence of a designation by local rule or order of the Magistrate to act as allowed by the language of § 636(c)(1).[2] At oral argument Defendants' counsel withdrew the latter contention when apprised of the fact that an Order designating the Magistrate to act under the provisions of § 636(c) had in fact been entered in this district.[3]

1. There being no statutory authority for the revocation of consent by a party once given, the Court treats this pleading as a Motion to Withdraw the Reference to the Magistrate under 28 U.S.C. § 636(c)(6). On the motion of a party, "extraordinary circumstances" must be shown to justify the withdrawal of the reference. *Id.* The Court may, however, order the withdrawal of the reference on its own motion "for good cause." *Id.*

2. The Defendants also asserted in their written submission an additional contention that the reference in this case was improper because of the lack of any implementation *by local rule,* as required by the last paragraph of § 636(c)(2) of "procedures to protect the voluntariness of the parties' consent." Counsel *did not urge this* contention in oral argument. In point of fact, the Defendants have not made any showing and, in fact, have not contended that the consent to reference in this case was as a matter of fact precipitated by any coercive activity on the part of anyone. The Court takes judicial notice of the procedure followed, as it may appropriately do, in achieving a consensual reference of a matter pending in this Court. On the filing of the complaint, the Clerk of the Court prepares a Summons for service upon each defendant named in the complaint and returns it by mail to the plaintiff's counsel with a letter which reads as follows:

Dear [Plaintiff's counsel]

Enclosed is a Consent to Proceed before the United States Magistrate Form which is to be completed by all parties and filed with the Clerk if it is the intention of all counsel that the above matter be tried before U.S. Magistrate D. Brock Hornby. It shall be the responsibility of counsel for the plaintiff to circulate the Consent Form among all counsel, once appearances are known, if counsel agree to an Order of Reference. The Consent Form is to be returned to this office only if it is executed by all counsel.

The form transmitted by this letter also contains in its final paragraph the Order of Reference for signature by the Judge of this Court. This is presented to the Judge by the Clerk if, and only if, the Consent Form is executed by all counsel. Neither the Magistrate nor the Judge of this Court has any contact with this process. The form is returned to the Clerk only in the event that all parties agree to the reference, hence, in a situation where any party declines the opportunity to have the case referred to the Magistrate, neither the Judge, the Magistrate, nor the Clerk is aware of the declination or of the identity of the declining party.

3. The order making such designation reads as follows:

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE
ORDER APPOINTING D. BROCK HORNBY, ESQUIRE AS FULL–TIME UNITED STATES MAGISTRATE

In accordance with the authority conferred by 28 U.S.C. § 631 *et seq.* and the further authority granted and action taken by the Judicial Conference of the United States, it is

ORDERED that D. Brock Hornby, Esquire, a member in good standing of the bar of this

Accordingly, it is necessary for this Court to address only the first contention put forth by the Defendants.

Defendants' argument with respect to this contention, simply put, is that this Court should recognize the rationale set forth in the case of *Pacemaker Diagnostic Clinic v. Instromedix, Inc.*, 712 F.2d 1305 (9th Cir.1983), *reh'g en banc granted* 718 F.2d 971 (9th Cir.1983), in which the Ninth Circuit Court of Appeals found § 636(c) to be violative of Article III of the United States Constitution.[4] Defendants' counsel points to the decision in *Horton v. State Street Bank & Trust Co.*, 590 F.2d 403 (1st Cir.1979), as indicative of the fact that the Court of Appeals for this Circuit would follow the *Pacemaker* decision with respect to the constitutionality of § 636(c). Counsel also points to this Court's decisions in *In re South Portland Shipyard and Marine Railways Corp.*, 32 B.R. 1012 (D.C. Me.1983), and *In Re Romeo Roy, Inc.*, 32 B.R. 1008 (D.C.Me.1983), in which this Court decided the issue of the continuing viability of Local Rule 41 of this Court. Those cases were decided in the context of the decision of the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which that Court determined that § 241(c) of the Bankruptcy Act of 1978, 28 U.S.C. § 1471(c) (Supp. IV 1980), violated Article III of the Constitution.[5]

Plaintiffs' counsel, on the other hand, points to counter-balancing persuasive authority of the Court of Appeals for the Third Circuit in the case of *Wharton-Thomas v. United States*, 721 F.2d 922 (3d Cir.1983), in which that Court, rejecting the reasoning of the opinion in the *Pacemaker* case, held that § 636(c) did not violate Article III of the federal Constitution. Plaintiffs' counsel further suggests, on the rationale of *Wharton-Thomas*, that any problem with the constitutionality of § 636(c) is cured by virtue of the fact that the statutory procedure requires the consent of the parties before a reference may be made to a Magistrate for trial.

Both counsel have argued their positions on the basis that there is no controlling authority in this Circuit upon the precise question of the constitutionality of § 636(c).

Court and of the highest court of the State of Maine, is hereby appointed as a full-time United States Magistrate, for the District of Maine, at an annual salary of $58,500, effective December 23, 1982, for a term of eight (8) years from such date, unless sooner removed pursuant to 28 U.S.C. § 631(h).

Said United States Magistrate shall enter upon the performance of his duties at 12:00 p.m. on December 23, 1982, at which time he shall take the oath or affirmation prescribed by 28 U.S.C. §§ 453 and 631(f).

*General Powers and Duties*

Said United States Magistrate shall have all the powers and perform all the duties as prescribed by Sections 636(a), (b) and (c) of Title 28 United States Code, and those powers designated in the Local Rules of this Court. Said Magistrate shall perform such other duties as may be assigned by the judges of the district court.

The Clerk will cause certified copies of this order to be spread upon the records of this Court and shall likewise forward a certified copy of this order to the Director of the Administrative Office of the United States Court, as required by 28 U.S.C. § 631(g).

Dated at Portland, Maine this 20th day of December, 1982.

For the Court:
S/ Edward T. Gignoux
Chief Judge, U.S. District Court

**4.** The decision on the *en banc* reconsideration of the *Pacemaker* decision was filed on February 16, 1984. *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.1984). That decision upheld the constitutionality of 28 U.S.C. § 636(c) and abrogates the prior ruling of the three-judge panel of that court. There is, therefore, as of the time the present case is decided, no viable authority holding § 636(c) to be unconstitutional. This circumstance significantly undercuts the merits of the Defendants' reasons for seeking a withdrawal of the reference to the Magistrate in this case.

**5.** This Court finds those cases to be off the point. They dealt with delegation of Article III judicial authority to a non-Article III adjunct tribunal, the Bankruptcy Court. In the present case we deal with a delegation of authority within the district court, an Article III tribunal. The difference is significant and cases decided in one context are not compelling authority on the delegation issue when it is raised in the other context. *See Wharton-Thomas*, 721 F.2d at 926–7.

Thus, they urge the Court to elect between the rationale of *Pacemaker I* on the one hand, and that of *Wharton-Thomas,* on the other, to reach a decision as to whether or not there is valid basis to allow the Defendants to withdraw their consent to proceed before the Magistrate in this matter.

The Court finds it unnecessary, on the particular facts of this case, to make that difficult election. The particular fact that obviates the need in this case to venture into the constitutional thicket is that the consent to proceed before the Magistrate here specifically provided for review of the Magistrate's decision by the District Court pursuant to the statutory language of § 636(c)(4). That language provides that "the parties may further consent to appeal on the record to a judge of the district court *in the same manner as on an appeal from the judgment of the district court to a court of appeals.*" 28 U.S.C. § 636(c)(4) (emphasis added). Thus, the case is factually distinguishable from *Wharton-Thomas* since that case was decided on the basis of a consent which was treated as providing only for review by the court of appeals. *Wharton-Thomas,* 721 F.2d at 924. The same distinction appears to be valid as to *Pacemaker.*[6] The clear implication of the Third Circuit Court of Appeals' treatment of the possibility of a consent authorizing appeal from the Magistrate *to the district court* is that such review by the district court would vitiate the defect that arose there precisely because the district court had not acted on the Magistrate's decision. *Id.* at 924. That implication is supported in the U.S. Supreme Court's decisions in *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), and *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424

(1980), where the court determined that any concern for violation of Article III was laid to rest wherever the district court retained the ultimate decision-making authority with respect to the Magistrate's decision.[7]

It may be important, however, that in both *Crowell* and *Raddatz,* the district court's review would be conducted on a *de novo* basis. The express terms of § 636(c)(4) provide that the appeal to the district court there permitted shall be "in the same manner as on an appeal from the judgment of the district court to a court of appeals." *Id.* The statute clearly authorizes the district court to conduct only an appellate review. Thus, there may be raised the question as to whether the restricted scope of appellate review in the district court under the provisions of § 636(c)(4) compels a different result than is reached in *Crowell* and *Raddatz.*

On this point we have clear First Circuit Court of Appeals authority in *DeCosta v. Columbia Broadcasting System, Inc.,* 520 F.2d 499 (1st Cir.1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). In *DeCosta* the Court of Appeals dealt with consensual reference to a United States Magistrate "for hearing and determination" pursuant to 28 U.S.C. § 636 as that existed prior to the amendments of October 10, 1979, Pub.L. 96–82, § 2, 93 Stat. 643. There, after the decision by the Magistrate, the case came before the referring district court for review of the Magistrate's decision. The district court held that the appropriate standard of review was limited "to a search for 'manifest error' of fact or law." *DeCosta,* 520 F.2d at 502. The Court of Appeals stated that it could find nothing in prior case law as of that point in time "to cast doubt on the

---

6. It is not possible to discern from the opinion of the three-judge panel in *Pacemaker I* whether the consent to reference there contemplated any review by the district court. The opinion of the *en banc* court indicates, however, that the appeal in *Pacemaker* was from the Magistrate directly to the three-judge panel of the Court of Appeals. *Pacemaker II,* 725 F.2d at 540.

7. In *Crowell,* the court sustained the use of adjunct factfinders even in the adjudication of constitutional rights so long as those adjuncts were subject to sufficient control by the district court. 285 U.S. at 54, 52 S.Ct. at 293. In *Raddatz,* the court held that the reservation of ultimate decision-making authority with respect to the actions of the Magistrate in the district court removed any constitutional defect under Article III.

propriety of truly consensual reference." *Id.* at 505. The Court also concluded that "the congressional intent [in the enactment of § 636] was to leave untouched the tradition, as Congress understood it, that parties could, without violation of Article III freely consent to refer cases to non-Article III officials for decision." *Id.* at 507. The court's conclusion was that it is clear "[t]hat it is constitutionally and statutorily permissible to refer cases, with the consent of all parties, for initial decision." *Id.* at 507-8. The court went on: "What does not appear at all clear to us is whether the decision of the referee once rendered is by statute subject to very limited review or to review for any prejudicial error as required by F.R.Civ.Pro. 53(e)(4)." *Id.* at 508. In addressing that question, the court found the prior case law to provide no well-defined rule. However, the court concluded that the district court's review of the Magistrate's action pursuant to the standard of Rule 53(e)(4) was erroneous. *Id.* at 508-9. The court then undertook its own review of the Magistrate's action pursuant to the "clearly erroneous" standard of Rule 52(a) *in lieu* of remanding the case to the district court for such a review. The implication is clear from that action that the court was satisfied that appellate review applying the standard of Rule 52(a) raised no constitutional problem. Since any such problem would raise a jurisdictional deficiency, it must be assumed that the court would have noticed and discussed *sua sponte* any such constitutional problem resulting from such review of the Magistrate's action. Thus, this Court is persuaded that under the existing law of this circuit, consensual reference of cases for trial to the United States Magistrate pursuant to 28 U.S.C. § 636(c)(4) with the statutory requirement of appellate review as provided for therein by the district court raises no viable issue of invalid delegation of offense to Article III.

Defendants' counsel counters, however, with a suggestion that *DeCosta* is stale precedent in view of the decision in *Horton v. State Street Bank & Trust Co.*, 590 F.2d 403 (1st Cir.1979). There, the Circuit Court of Appeals dealt with the question of its own jurisdiction in a case where a consensual reference had resulted in trial before a United States Magistrate, and "[n]o review was had or sought in the district court itself." *Id.* at 403. The appeal in that case was taken directly to the Court of Appeals from the Magistrate's decision. The holding of the case is that the decision of the Magistrate in those circumstances is not a "final decision" of the district court as required by 28 U.S.C. § 1291, which defines the appellate jurisdiction of the Courts of Appeal. In reaching that decision, the court cited the *DeCosta* case and specifically pointed out the reluctance there expressed "to approve even a clearly worded consensual reference to a Magistrate which purports *to finally bind the parties to his rulings of law.*" *Horton,* 590 F.2d at 404 (quoting *DeCosta,* 520 F.2d at 508). While characterizing that expression in *DeCosta* as *dictum,* the court stated: "[W]e would be acting in a manner at odds with the tenor of *DeCosta* were we now to treat a decision of the magistrate, standing alone, *as a final decision of a district court appealable to this court.*" *Horton,* 590 F.2d at 404 (emphasis added).

This language makes it clear that the court was dealing only with the issue of the existence of appellate court jurisdiction. Indeed, the court subsequently refers to its decision in *Reed v. Board of Election Commissioners,* 459 F.2d 121 (1st Cir.1972), and its characterization of excessive delegation of authority to a Magistrate as "an abnegation of judicial authority ... entirely contrary to the provisions of Article III." *Horton,* 590 F.2d at 404 (quoting *Reed,* 459 F.2d at 123). This reference makes it clear that the court had not put out of mind the significance of any improper delegation of Article III judicial authority. Nevertheless, the only requirement imposed by the court in *Horton* with respect to finality of a judgment for purposes of appellate review was that the Magistrate's decision be subject to *appellate* review by the district court. The court at no point cast any

doubt upon the implication in *DeCosta* that appellate review of the Magistrate's decision by the district court was sufficient under Article III. Thus, this Court finds that *Horton* does not weaken the continuing vitality of the rationale of *DeCosta*.

■ For the reasons set forth hereinabove, this Court holds that the Defendants' consent to the reference of this matter to the Magistrate for the conduct of trial was a valid and binding consent and that further proceedings before the Magistrate pursuant to that consent do not impermissibly extend the jurisdiction of the United States Magistrate or otherwise infringe upon the Article III jurisdiction of this Court. Further, the Court holds that the Defendants' attempted revocation of consent is ineffective, there being no extraordinary circumstances shown by the De-

fendants justifying under § 636(c)(6) a vacation of the reference of this matter to the Magistrate under § 636(c).[8] The Defendants' revocation of consent is without effect and this matter is properly before the Magistrate for trial and is hereby REMANDED for that purpose.

So ORDERED.

**8.** This case is in a different posture, in one respect, than *Wharton-Thomas, Pacemaker, Horton* or *DeCosta*. In all of those cases the issue of the constitutionality of consensual reference under § 636(c) was raised after the trial proceedings had actually been had before the Magistrate. Here the issue is raised prior to the occurrence of trial. The Court has therefore given careful consideration as to whether common sense and a refined view of judicial valor dictate that the Court should act pursuant to § 636(c)(6), on its own motion, to withdraw the reference to the Magistrate for "good cause." *Id.* The Court is satisfied that, considering the facts of the case, such good cause does not exist. First, Plaintiffs' counsel makes a persuasive argument here that the Defendants' eleventh hour attempt to achieve the withdrawal of the reference to the Magistrate is simply an effort to unfairly delay the trial in this case. The decision of the three-judge panel in *Pacemaker*, on which the Defendants rely in seeking to obtain the withdrawal of the reference, issued on August 5, 1983. Yet no effort was made to obtain the withdrawal until the filing of the Revocation of Consent on February 17, 1984, some seven months later. Throughout that period of time, counsel on both sides of the case proceeded before the Magistrate. Even after the trial date of March 1, 1984, was set at the final pretrial conference, held before the Magistrate on January 5, 1984, a period of thirty-three days elapsed before the Defendants undertook the effort to obtain the withdrawal of the reference. A careful review of the complete file made in this matter to date and some understanding of the strength of the Plaintiffs' case as reviewed by the documents in the file leads the Court to give

credence to the proposition put forth by Plaintiffs' counsel that the effort to obtain a withdrawal of the reference is simply an effort to delay the ultimate adjudication of this case. The Court cannot help but conclude that if there was a genuine desire on the part of the Defendants to have an Article III judge to determine this case, the effort would have been made to obtain the withdrawal of the reference much sooner.

Secondly, there no longer exists, in view of the decision of the *en banc* court in *Pacemaker* the same level of uncertainty as to the validity of § 636(c) that existed when the Revocation of Consent was filed. As the law now stands, there is no viable authority specifically on the point of the constitutionality of § 636(c) which holds the statute to be unconstitutional. That uncertainty is the sole basis put forward in the written Revocation of Consent. In view of the position taken by the First Circuit Court of Appeals in the *DeCosta* case the possibility of that Court finding § 636(c) unconstitutional appears remote especially in the present posture of the authorities on that issue.

Further, there is no question but that in the present status of this Court's docket which is now rigorously scheduled through the first of July 1984, a withdrawal of the reference in this case would substantially delay the occurrence of trial in this matter from the presently scheduled March 1, 1984, trial date. The imposition of that delay upon the Plaintiffs in reaching an adjudication of this case, where the Plaintiffs press vigorously to avoid such delay, seems unwarranted, especially in view of the diminished force of the reasons put forward as a basis for revocation of the reference.