John F. **OUIMETTE**

v.

John **MORAN, Director Department of Corrections.**

Civ. A. No. 88–431 L.

United States District Court, D. Rhode Island.

Feb. 15, 1990.

Allegra E. Munson, Norfolk, Mass. and John A. Baccari, Wakefield, Mass., for petitioner.

Caroline C. Cornwell, Sp. Asst. Atty. Gen. Dept. of Atty. Gen., Providence, R.I., for respondent.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This case is presently before the Court on the motion of respondent represented by the Rhode Island Attorney General (who is the real party in interest) to vacate the reference of the above entitled matter to Magistrate Jacob Hagopian. The matter was referred to the Magistrate with the consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. The Attorney General now asserts that extraordinary circumstances exist for which this Court may vacate the reference in accord-ance with 28 U.S.C. § 636(c)(6) and Fed.R. Civ.P. 73(b).

FACTS

On April 12, 1976, petitioner, John F. Ouimette, was convicted (along with others) in the Rhode Island Superior Court of being an accessory before the fact of robbery and of conspiracy to commit robbery in a much publicized trial known as the "Bonded Vault" case. The presiding officer at said trial was then Associate Justice now Presiding Justice Anthony A. Giannini of the Rhode Island Superior Court. Petitioner was sentenced to life imprisonment. After petitioner's conviction was affirmed by the Rhode Island Supreme Court, he filed a motion for reduction of sentence with Judge Giannini. Judge Giannini recused himself from hearing such motion and appointed a three member panel of Superior Court judges to consider the matter. After petitioner confessed in open court to his involvement in the "Bonded Vault" robbery, his sentence was reduced by the three judge panel to forty-five years imprisonment, fifteen of which were suspended.

In July of 1988, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in this United States District Court. The pending petition alleges two grounds for relief. First, petitioner asserts that the prosecution's witholding of critical exculpatory and impeachment evidence concerning the State's chief witness against him at the trial denied him his right to due process of law and his right to confront a witness against him. Second, petitioner claims that he was denied due process of law and/or effective assistance of counsel when he was induced to waive his privilege against self-incrimination before the three judge panel and his right to petition the federal court for redress of constitutional violations in exchange for a promise of a substantial sentence reduction which never materialized.

On October 22, 1988, petitioner received written notice from this Court that his case had been referred to the magistrate. In conjunction with such notice, petitioner also received a form entitled "Consent to Pro-

ceed Before a United States Magistrate." The consent form stated that in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, "the parties in this case hereby voluntarily waive their rights to proceed before a judge of the United States district court and consent to have a United States magistrate conduct any and all further proceedings in the case, including the trial, and order the entry of a final judgment." Petitioner, by his attorneys, signed the consent form and forwarded his signed consent to the court on October 24, 1988. On December 22, 1988, the Rhode Island Department of the Attorney General received a similar letter and a copy of the consent form previously signed by petitioner. Although allegedly unfamiliar with the form and unaware of its effect, a Special Assistant Attorney General signed it on December 28, 1988.

The travel of the case from that point is as follows. On January 12, 1989, Magistrate Hagopian issued a show cause order, in response to which the Attorney General filed a motion to dismiss the action alleging that petitioner had not exhausted the remedies available in the courts of the State. Magistrate Hagopian denied the motion treating it as a motion for summary judgment or to dismiss and the Attorney General filed his answer to the petition on June 27, 1989.

In August of 1989, petitioner filed various discovery motions including a request for admissions, a request for production of documents, interrogatories and a request to take the deposition of Chief Judge Albert DeRobbio of the Rhode Island District Court who was the prosecutor at the original trial in Superior Court. The Attorney General objected to petitioner's motions pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts which provides that discovery is available in a habeas corpus action only if "the judge in the exercise of his discretion and for good cause shown grants leave to do so...." After a hearing held on September 14, 1989, Magistrate Hagopian found that petitioner had demonstrated good cause to pursue discovery in the case and ordered the Attorney General to respond to petitioner's requests in accordance with the relevant Federal Rules of Civil Procedure. The Attorney General then filed a motion for reconsideration of this order which the Magistrate denied.

On October 12, 1989, the Attorney General filed the above mentioned motion asking the Court to vacate the reference of this matter to the Magistrate. The Court after having heard arguments on the motion to vacate took the matter under advisement. The motion is now in order for decision.

DISCUSSION

A judge of this Court referred petitioner's writ of habeas corpus to the Magistrate pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Section 636(c)(1) provides:

> Upon the consent of the parties, a full-time United States magistrate or a part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves....

28 U.S.C. § 636(c)(1). Similarly, Rule 73 states:

> When a magistrate has been designated to exercise civil trial jurisdiction, the clerk shall give written notice to the parties of their opportunity to consent to the exercise by a magistrate of civil jurisdiction over the case, as authorized by Title 28, U.S.C. § 636(c)....

Fed.R.Civ.P. 73(b). In addition, both of these authorities provide that a district court may vacate a consensual reference of a civil matter to a magistrate for good cause or under extraordinary circumstances shown by any party. 28 U.S.C. § 636(c)(6); Fed.R.Civ.P. 73(b).

The constitutionality of § 636(c) has been challenged in at least nine circuits on the ground that allowing a magistrate to enter final judgment in any civil case violates Article III of the United States Constitution. Even under the closest constitutional scrutiny, however, every court which has

considered the issue has ultimately concluded that § 636(c) is constitutional. *See Sinclair v. Wainwright*, 814 F.2d 1516 (11th Cir.1987); *Gairola v. Commonwealth of Virginia Department of General Services*, 753 F.2d 1281 (4th Cir.1985); *Geras v. Lafayette Display Features, Inc.*, 742 F.2d 1037 (7th Cir.1984); *Lehman Brothers Kuhn Loeb, Inc. v. Clark Oil & Refining Corp.*, 739 F.2d 1313 (8th Cir.1984) (en banc), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *Puryear v. Ede's Ltd.*, 731 F.2d 1153 (5th Cir.1984); *Collins v. Foreman*, 729 F.2d 108 (2d Cir.), *cert. denied*, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); *Goldstein v. Kelleher*, 728 F.2d 32 (1st Cir.), *cert. denied*, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Wharton–Thomas v. United States*, 721 F.2d 922 (3d Cir.1983).

In upholding the constitutionality of § 636(c), the courts have emphasized that the power of a district judge to vacate a reference to a magistrate and the requirement of litigant consent provide statutory safeguards which protect the Article III interests of both the litigants and the judiciary. *See Goldstein v. Kelleher*, 728 F.2d at 36; *Wharton–Thomas v. United States*, 721 F.2d at 929–30; *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d at 1040–41; *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d at 540. Thus, the courts have recognized that in order for the consent to proceed before a magistrate to be valid, the litigants' waiver of the personal right to an Article III judge must be undertaken freely and voluntarily. *Pacemaker*, 725 F.2d at 543. *See also Adams v. Heckler*, 794 F.2d 303, 307 (7th Cir.1986); *Goldstein*, 725 F.2d at 35. In addition, "[t]he consent required under 28 U.S.C. § 636(c) must be 'clear and unambiguous.'" *Adams v. Heckler*, 794 F.2d at 306 (citations omitted).

In *Adams*, the court found that since plaintiffs had signed a written consent form which stressed that consent to the disposition of the case by a magistrate was entirely voluntary, there was no dispute that such consent "was clear, unambiguous, and explicit." *Id.* at 307. Similarly, in this case *sub judice*, the Attorney General's consent to have a United States magistrate conduct all proceedings with regard to petitioner's writ of habeas corpus and order the entry of final judgment was clear, unambiguous and undertaken freely and voluntarily. The Attorney General does not contest the validity of his consent but, rather, requests that this Court exercise its power under § 636(c)(6) to vacate the reference to the magistrate because extraordinary circumstances exist or, in the alternative, for good cause.

In determining whether "good cause" or "extraordinary circumstances" exist which would justify vacating the reference to the Magistrate, the Attorney General asks this Court to consider three important circumstances. First, he questions whether the final determination of a habeas petition is appropriate for referral to a non-Article III judicial officer. Second, he asserts that the sensitivity of the claims in this case provide sufficient reason to vacate the reference. Finally, he points out that no one in the whole Department of the Attorney General was familiar with the referral form or the ramifications of consenting to proceed before a magistrate. After careful consideration of all the facts, this Court finds no extraordinary circumstances and no legitimate reason to vacate the reference of this matter to the Magistrate. The Attorney General's motion is, therefore, denied.

Although the Attorney General does not challenge the constitutionality of § 636(c) on its face, he contends that the Court should vacate this particular reference to the Magistrate because the final determination of a habeas petition is inappropriate for referral to a non-Article III judicial officer and was not contemplated by Congress. In support of this proposition, he asserts that allowing a magistrate to enter final judgment in a habeas case would be inappropriate under the Rules Governing Section 2254 Cases in the United States District Courts, the United States Magistrates Act (28 U.S.C. §§ 631 through 639)

and the Local Rules of the District of Rhode Island for the United States District Court.

Section 636(b)(1)(B) of the United States Magistrates Act establishes the authority of the magistrate to conduct evidentiary hearings and submit proposed findings of fact and recommendations for the disposition, by the district judge, of certain pre-trial matters and applications for post-trial relief.[1] The Local Rules for the District of Rhode Island parallel the provisions of the Magistrates Act and thereby promulgate similar standards governing the role of the magistrate with regard to dispositive pre-trial motions and applications for post-trial relief.[2] The Rules Governing Section 2254 Cases in United States District Courts follow the same pattern. Rule 8(b)(1) provides that a magistrate may conduct evidentiary hearings on a petition for writ of habeas corpus and submit to a judge of the court proposed findings of fact and recommendations for disposition in accordance with 28 U.S.C. § 636(b).

This Court is well aware of the procedures set forth in the Local Rules, the Magistrates Act and the Rules Governing Section 2254 Cases which allow a magistrate to submit to a district judge, subject to de novo review, proposed findings of fact and recommendations for the disposition of applications for post-trial relief. Those procedures, however, deal exclusively with nonconsensual references and therefore have no relevance to the case at bar which is a civil action referred to the magistrate with the consent of the parties in accordance with 28 U.S.C. § 636(c) and Local Rule 32(d)(3).[3]

 It is well established that habeas corpus proceedings are characterized as civil in nature. *Fisher v. Baker*, 203 U.S.

1. 28 U.S.C. § 636(b)(1) provides:

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

2. Local Rule 32(c)(1) provides:

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), a magistrate may hear, conduct such evidentiary hearings as are necessary or appropriate, and submit to a judge proposed findings of fact and recommendations for the disposition of: (i) applications for post-trial relief made by individuals convicted of criminal offenses; (ii) prisoner petitions challenging conditions of confinement; and (iii) motions for injunctive relief (including temporary restraining orders and preliminary injunctions), for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by a defendant, to suppress evidence in a criminal case, to dismiss or permit the maintenance of a class action, to dismiss for failure to state a claim upon which relief may be granted, to involuntarily dismiss an action, for judicial review of administrative determinations, and for review of default judgments.

3. Local Rule 32(d)(3) provides:

Where the parties consent, the magistrate may try the issues of any civil case upon approval of a district judge. The entry of final judgment in any civil case, however, shall be made by a judge of the court or at the direction of a judge unless the parties also agree to the entry of final judgment by the magistrate on the issues tried.

174, 181, 27 S.Ct. 135, 136, 51 L.Ed. 142 (1906). The Attorney General contends that habeas corpus proceedings are "unique" and therefore the general rules for civil actions are not applicable. Although the applicability of the Federal Rules of Civil Procedure to habeas corpus actions has been limited to some degree, *See Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 *reh'g denied,* 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50 (1969), the characterization of such cases as civil in nature remains unchanged, placing habeas petitions squarely within the category of matters which the court may refer to a magistrate upon consent of the parties in accordance with 28 U.S.C. § 636(c).

■ The Attorney General suggests that since Congress did not grant the express authority for a magistrate to enter final judgment in a habeas proceeding, it must be presumed that the magistrate may not do so, even when the parties have consented. In reaching this conclusion, the Attorney General notes that after the Supreme Court decision in *Wingo v. Wedding,* 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), which cast doubt on the intent of Congress regarding the breadth of a magistrate's authority in habeas cases, the Magistrates Act was amended in 1976 to specifically permit a magistrate to conduct evidentiary hearings in those cases. The Act was amended again in 1979 when § 636(c) was added providing that magistrates could enter final judgment in civil cases with the consent of the parties. Thus, the Attorney General concludes that if Congress had intended that a magistrate be authorized to enter final judgment in habeas cases upon consent of the parties, it would surely have so provided at the time of those amendments.

This Court rejects those arguments for two reasons. First, Congress did grant the express authority for a magistrate to make a final determination in a habeas case by providing that the magistrate may conduct "... *any or all proceedings in a* jury or *nonjury civil* matter and order the entry of judgment in the case...." 28 U.S.C. § 636(c)(1) (emphasis added). In addition,

the object of Congress in enacting § 636(c) was " 'to amend the current jurisdictional provisions for U.S. magistrates ... in order to further clarify and expand the jurisdiction of U.S. magistrates and improve access to the Federal courts for the less-advantaged.' " *Pacemaker,* 725 F.2d at 540 (quoting S.Rep. No. 74, 96th Cong., 1st Sess. 1, *reprinted in* 1979 U.S.Code Cong. & Admin.News 1469, 1469). With the goal of expansion in mind, it is logical to infer that if Congress had intended to limit the definition of "civil matters" so as to exclude habeas corpus proceedings, it surely would have done so with express language and this Court refuses to read any such limitation into the statutory language which is clear and unambiguous on its face.

The Attorney General's relentless attempt to persuade this Court that the delineation of specific authority under § 636(b)(1)(B) for the magistrate to submit proposed findings of fact and recommendations for disposition to the district judge with regard to applications for post-trial relief precludes the magistrate from entering final judgment in a habeas case under any circumstances is futile. In *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 *reh'g denied,* 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980), the Supreme Court held that since a motion to suppress evidence in a criminal case was a "dispositive" motion covered by § 636(b)(1)(B), the magistrate had no authority to make a final and binding disposition on the merits of the motion. On that basis, the Attorney General suggests that since § 636(b)(1)(B) equates applications for post-trial relief with dispositive pre-trial motions which may not be designated to a magistrate for final determination under § 636(b)(1)(A), the magistrate must also lack the authority to make a final disposition of a habeas corpus petition even when consented to by the parties. This leap in logic is simply not supported by the statutory framework. Section 636(c) is a separate and unique provision which has no relation to the nonconsensual references delineated by Congress in § 636(b)(1). In *Raddatz,* the Court determined that the decision making power with regard to a

motion to suppress evidence in a criminal trial had to remain in an Article III judge. This decision, however, provides no determinative principle in instances of consensual reference in a civil matter.

Similarly, the Supreme Court's holding in *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) is not applicable to the case now before the Court. There, in determining that a magistrate was not authorized to conduct voir dire of a jury prior to a felony trial by a district court judge the Court stated, "the carefully defined grant of authority to conduct trial of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial." *Gomez*, 109 S.Ct. at 2245. The Attorney General contends, based on the holding in *Gomez*, that the delineation of specific authority to make proposed findings of fact and recommendations for disposition in the habeas context should be construed as an implicit withholding of the authority of the magistrate to enter a final judgment in such a case. Once again, the analogy fails. The fact that a district judge may not designate a magistrate to make a final determination with regard to a writ of habeas corpus without the consent of the parties has no bearing on the authority of the magistrate to enter final judgment in a civil proceeding where the parties have consented in accordance with § 636(c).

This Court has found no case where a party has asserted that it would be inappropriate to allow a magistrate to enter final judgment in a habeas corpus proceeding where the parties have consented pursuant to § 636(c). On the contrary, at least six circuits have implicitly upheld the validity of the magistrate's authority to order the entry of a final judgment in a habeas case with the consent of the parties by routinely hearing appeals from such orders in accordance with the procedures set forth in 28 U.S.C. § 636(c). *See Waye v. Townley*, 871 F.2d 18 (4th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3202, 105 L.Ed.2d 710 (1989); *Dumond v. Lockhart*, 885 F.2d 419 (8th Cir.1989); *Moore v. Tate*, 882 F.2d 1107 (6th Cir.1989); *Turner v. Henman*, 829 F.2d 612 (7th Cir.1987); *Sinclair v. Wainwright*, 814 F.2d 1516 (11th Cir.1987); *Bullock v. Lucas*, 743 F.2d 244 (5th Cir. 1984), *modified sub nom. Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986).

In *Sinclair v. Wainwright, supra*, a criminal defendant filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Florida. Both the petitioner and the State consented to have the case decided by a United States magistrate who granted the State's motion for summary judgment. Petitioner appealed directly to the Court of Appeals for the Eleventh Circuit and argued, *inter alia*, that the magistrate had no authority to decide the summary judgment motion because "the Federal Magistrate[s] Act, 28 U.S.C. § 636(c), which permits magistrates to enter judgments in civil cases under certain conditions, is unconstitutional because it violates article III of the Constitution." *Id.* at 1519. The court dismissed petitioner's argument summarily noting that

> At least nine other circuits which have considered this issue have held that section 636(c) is constitutional because the act requires that the parties and the district court consent to the transfer of the case to a magistrate and because the district court retains sufficient control over the magistrate.

*Id.* (citations omitted). Thus, even where a petitioner has questioned the constitutionality of § 636(c) in the context of a magistrate's entry of final judgment in a habeas corpus proceeding, the court has upheld the validity of the consent.

In sum, this Court finds no reason to question the authority of the magistrate to conduct all proceedings and order the entry of final judgment in a habeas case where the parties have consented in accordance with 28 U.S.C. § 636(c). The statutory language granting such authority to magistrates is clear and unambiguous on its face and the applicability of § 636(c) in the habeas context has been upheld in at least six circuits across the country. The Attorney General's arguments in support

of limiting the reach of § 636(c) are unpersuasive and are, therefore, rejected by this Court.

Although the magistrate clearly has the authority to conduct the proceedings in the instant case, the Court may vacate the reference to the magistrate "for good cause shown on its own motion, or under extraordinary circumstances shown by any party...." 28 U.S.C. § 636(c)(6). Few courts have had occasion to discuss what constitutes "good cause" or "extraordinary circumstances" with respect to vacating a reference to a magistrate pursuant to 28 U.S.C. § 636(c)(6). In *Carter v. Sea Land Services Inc.*, 816 F.2d 1018 (5th Cir.1987), the court considered whether a litigant had a right to withdraw previously given consent to trial before a magistrate. There, both parties opted for trial before a magistrate under 28 U.S.C. § 636(c) and signed a form expressly consenting to the reference. *Id.* Five days before trial, plaintiff filed a written motion to revoke her consent, which motion the magistrate denied. *Id.* On appeal, plaintiff did not deny that her consent was valid when made but challenged the denial of her "right" to withdraw her consent. *Id.* at 1020. In reaching the conclusion that plaintiff had no absolute right to withdraw validly given consent to trial before a magistrate, the court refused to accept

> the slippery-slope invitation to read into the statute a rule that would allow a party to express conditional consent to a reference, thereby obtaining what amounts to a free shot at a favorable outcome or a veto of an unfavorable outcome. Any such rule would allow the party to hold the power of consent over the magistrate like a sword of Damocles, ready to strike the reference should the magistrate issue a ruling not quite to the party's liking. We will not countenance such fast and loose toying with the judicial system.

*Id.* at 1020–21.

In *Carter*, the court recognized that a motion to withdraw consent to trial before a magistrate "may be granted only for good cause, determination of which is committed to the court's sound discretion." *Id.* at 1021. The court also set forth some of the factors a judge should consider in determining whether to exercise such discretion. These factors include: undue delay, inconvenience to the court and witnesses, prejudice to the parties, whether the movant is acting *pro se*, whether consent was voluntary and uncoerced, whether the motion is made in good faith or is dilatory and contrived, the possibility of bias or prejudice on the part of the magistrate, and whether the interests of justice would best be served by holding a party to his consent. *Id.* (citations omitted).

None of the factors outlined in *Carter* provide a basis for this Court to exercise its discretion to vacate the reference of this case to the Magistrate. Most importantly, granting the motion to vacate would cause undue delay in the adjudication of this case. Petitioner filed his writ of habeas corpus in July of 1988 and is still waiting for a decision on the merits of his petition. If the Court were to vacate the reference to the Magistrate at this point in time, there would be an even further delay in the proceedings while petitioner remains incarcerated. Since the purpose of a writ of habeas corpus is " 'to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints,' " *Harris v. Nelson*, 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969) (citations omitted), this Court is reluctant to delay such proceedings unnecessarily. In addition, the Court has some doubts as to whether the motion was made in good faith for the reasons stated. Clearly, the Attorney General wants to vacate the reference because he desires to rehash petitioner's discovery motions before a district judge. The interests of justice would best be served in this case by holding both parties to their consent.

■ Although the Attorney General concedes that vacation of the reference is not required under the standards set forth in *Carter*, he asks this Court to find "extraordinary circumstances" which would justify vacating the reference in the present case. This Court has already dismissed the Attor-

ney General's first contention that extraordinary circumstances exist due to the fact that it is inappropriate to refer this type of case to a magistrate for final determination. The second allegedly "extraordinary circumstance" raised by the Attorney General is the "sensitivity" of the issues involved in this case. Petitioner's allegations of prosecutorial misconduct and judicial inducement to waive constitutional rights are clearly not so sensitive as to require determination by an Article III judge and, therefore, do not provide sufficient grounds for the Court to vacate the reference to the Magistrate.

In *Pacemaker*, the Court of Appeals for the Ninth Circuit sitting en banc explained

The district court's power to void a reference *sua sponte* is predicated upon good cause, a term yet to be explored in the context of specific cases. It would seem at a minimum, however, that good cause for resumption of direct Article III control exists in a case where a political branch of the government is directly affected, or where a substantial constitutional question is presented, or where rights of numerous parties not present before the court might be affected by the decision, or in any other case containing sensitivities such that determination by an Article III judge is required to insure the appearance and the reality of independence and impartiality in the decision.

*Pacemaker*, 725 F.2d at 545 (citation omitted). The supposedly "sensitive" nature of this case stems from the fact that the prosecutor charged with misconduct, Albert DeRobbio, is currently the Chief Judge of the Rhode Island District Court and the judge who allegedly induced the waiver of petitioner's constitutional rights is a sitting justice of the Rhode Island Superior Court. This case, however, does not affect a political branch of government, raise a substantial constitutional question or influence the rights of parties not before the court. Furthermore, although such allegations of improper conduct are always sensitive issues, they clearly are not issues which require determination by an Article III judge to insure the appearance and the reality of independence and impartiality in

the decision. Certainly, there are no grounds to question the impartiality or integrity of Magistrate Hagopian or to doubt his qualifications to make a final determination in such a case. In fact, since Magistrate Hagopian has a wealth of experience and knowledge in dealing with habeas corpus petitions, he may well be the most qualified person in this District to make a final determination in this matter.

The third circumstance that the Attorney General asks this Court to consider is that no one in the Department of Attorney General was familiar with the referral form in the habeas context and the form was signed with a lack of awareness as to the full ramifications of the consent. The consent form signed provides:

In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case hereby voluntarily waive their rights to proceed before a judge of the United States district court and consent to have a United States magistrate conduct any and all further proceedings in the case, including the trial, and order the entry of a final judgment.

This Court is bewildered as to how any Special Assistant Attorney General could have misunderstood such language or why, if in doubt as to its import, she would not have sought the advice of a superior in the Department of the Attorney General about the significance of the consent form before signing it.

In *Carter*, the court found that plaintiff had presented no legitimate reason for the withdrawal of her consent and, in addition, observed,

Further, Carter's attorney sought to withdraw consent only after the magistrate denied his second motion for continuance and his motion to withdraw as counsel, an action we perceive to be on the outer limits of professional propriety, not shielded by counsel's obligation of zealous representation.

*Carter*, 816 F.2d at 1021–22. Similarly, in *Swallow Turn Music v. Tidal Basin Inc.*, 581 F.Supp. 504, 510 (D.Me.1984), the court found that defendants' attempted revoca-

tion of consent to proceed before the magistrate was ineffective since defendant had not shown "extraordinary circumstances" which would justify a vacation of the reference in accordance with § 636(c)(6).[4] After giving careful consideration to whether it should withdraw the reference on its own motion, the court in *Swallow Turn Music* was persuaded that "the effort to obtain a withdrawal of the reference is simply an effort to delay the ultimate adjudication of this case." *Id.* at 510 n. 8. In reaching this conclusion, the court noted that the decision on which defendants relied in seeking to obtain withdrawal of the reference was issued seven months before defendants attempted to revoke their consent, during which time both parties had proceeded before the magistrate without objection. *Id.* Thus the court could not help but conclude that "if there was a genuine desire on the part of the Defendants to have an Article III judge to determine this case, the effort would have been made to obtain the withdrawal of the reference much sooner." *Id.*

This Court is equally convinced that if the Attorney General had a genuine desire to have an Article III judge determine the merits of this petition for writ of habeas corpus, he would not have consented to the referral in the first place, or, at a minimum, would have attempted to vacate the reference at a much earlier date. The Attorney General consented to proceed before the Magistrate in December of 1988. From that time until September of 1989, counsel for both parties proceeded before the Magistrate without objection. It was not until September, after Magistrate Hagopian ordered respondent to respond to petitioner's discovery requests, including the request to depose Judge DeRobbio, that this motion was filed seeking to vacate the reference to the Magistrate.

Based on these facts, this Court is inclined to agree with petitioner's contention that the Attorney General's dissatisfaction

with the Magistrate's rulings with regard to pre-trial discovery was the actual impetus for this motion. The Attorney General's novel arguments asserted in an attempt to create "extraordinary circumstances" which would justify a vacation of the reference to the magistrate are superficial and unsubstantial and thus are firmly rejected by this Court. Both parties in this case consented freely and voluntarily to proceed before the Magistrate in accordance with 28 U.S.C. § 636(c) and Fed.R. Civ.P. 73(b) and the Attorney General cannot now revoke his consent because he is unhappy with the Magistrate's discovery orders.

CONCLUSION

For the reasons set forth above, the Attorney General's motion to vacate the reference of the above entitled matter to the Magistrate is denied.

*It is so Ordered.*

---

**4.** In this case, defendants filed a notice entitled "Revocation of Consent to Proceed Before the Magistrate" less than two weeks before the trial was scheduled to begin. Since the Court found no statutory authority for the revocation of con-

sent by a party once given, it treated the pleading as a "Motion to Withdraw the Reference to the Magistrate under 28 U.S.C. § 636(c)(6)." *Swallow Turn Music,* 581 F.Supp. at 506 n. 1.